AO 91 (Rev. 11/11) Criminal Complaint                                            AUSA Jonathan L. Shih (312) 353-5361

**FILED**
7/1/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

JAMIEANE ELLIS

CASE NUMBER: 26 CR 366

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

### Count One

On or about January 12, 2026 at Chicago, in the Northern District of Illinois, Eastern Division, the defendant JAMIEANE ELLIS violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Section 841(a)(1) | Knowingly and intentionally distributed a controlled substance, namely, 400 grams or more of a mixture and substance containing a detectable amount of fentanyl, a Schedule II Controlled Substance |

### Count Two

On or about July 1, 2026 at Chicago, in the Northern District of Illinois, Eastern Division, the defendant JAMIEANE ELLIS violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Section 841(a)(1) | Knowingly and intentionally possessed with intent to distribute a controlled substance, namely, 400 grams or more of a mixture and substance containing a detectable amount of fentanyl, a Schedule II Controlled Substance |

This criminal complaint is based upon these facts:

  X   Continued on the attached sheet.

*Dylan Belcher*

DYLAN BELCHER
Special Agent, Homeland Security Investigations (HSI)

Pursuant to Fed. R. Crim. P. 4.1, this Complaint is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the Complaint and Affidavit by telephone.

Date: July 1, 2026

*Laura K. McNally*
*Judge's signature*

City and state: Chicago, Illinois

LAURA K. MCNALLY, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

### **AFFIDAVIT**

I, DYLAN BELCHER, being duly sworn, state as follows:

1.      I am a Special Agent with the Department of Homeland Security – Homeland Security Investigations ("HSI")[1] and have been so employed since 2023. I am currently assigned to the Gangs and Violent Crimes Task Force ("GVCTF").  As part of my duties as an HSI Special Agent, I investigate criminal violations relating to narcotics trafficking offenses, including criminal violations of the federal controlled substance laws, including, but not limited to, Title 21, United States Code, Sections 841, 843, and 846.  I have been involved with investigations of Title 21 offenses and am familiar with the Interagency Cooperation Agreement between the U.S. Drug Enforcement Administration ("DEA") and HSI.

2.      This affidavit is submitted in support of a criminal complaint alleging that Jamieane ELLIS has violated Title 21, United States Code, Section 841(a)(1) (Counts One and Two).  Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging ELLIS with distribution of a controlled substance, namely, 400 grams or more of a mixture and substance containing a detectable amount of fentanyl, a Schedule II Controlled Substance (Count One) and possession with intent to distribute 400 grams

---

[1] A Homeland Security Investigations Special Agent is a qualified law enforcement officer under 18 U.S.C. § 2510(7).

or more of a mixture and substance containing a detectable amount of fentanyl, a Schedule II Controlled Substance (Count Two), I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed the offenses alleged in the complaint.

3. The statements in this affidavit are based on my personal knowledge, and on information I have received from other law enforcement personnel and from persons with knowledge regarding relevant facts and other reliable sources.

*Background of Investigation*

4. Since approximately September 2024, law enforcement, including HSI, the Chicago Police Department ("CPD"), and the Internal Revenue Service – Criminal Investigation ("IRS-CI") have been investigating a drug trafficking organization (the "DTO") that distributes narcotics on the west side of Chicago, including near the intersection of W. Chicago Ave. and N. St. Louis Ave (the "Chicago and St. Louis drug spot" or "the drug spot"). Through physical surveillance, court-authorized wire intercepts, controlled purchases, trash pulls, and other investigative means, the investigation has identified multiple residences used to store, prepare, and package narcotics for resale to narcotics customers in Chicago, Illinois, including 8348 South Drexel Ave., 3rd Floor, Chicago, Illinois ("Premises 1"). The investigation has also revealed that ELLIS engages in narcotics trafficking and is tied to Premises 1.

*October 20, 2025, Recovery of Trash Indicative of Narcotics Production from ELLIS*

5.     On or about October 20, 2025, at approximately 9:15 p.m., law enforcement officers ("LEOs") conducting physical and electronic surveillance observed ELLIS exit the front entrance of the multi-unit building containing Premises 1, with a large brown box.[2]  Surveilling officers observed ELLIS walk to a white Chevrolet pickup truck bearing Illinois license plate 3217448B ("Vehicle 9"), parked at approximately 8350 South Drexel Avenue. LEOs observed ELLIS place the large brown box inside Vehicle 9 in the area of the rear driver side door, then enter the driver's seat of Vehicle 9 and depart the area.

6.     LEOs initiated mobile surveillance of Vehicle 9. At approximately 9:21 p.m., LEOs conducting mobile surveillance observed Vehicle 9 traveling south in the east alley of the 8300 block of South Cregier Avenue, Chicago, Illinois. LEOs observed Vehicle 9 come to a stop at approximately 8309 South Cregier Avenue, where ELLIS was observed exiting the driver's seat. ELLIS then opened the rear driver's side door of Vehicle 9, retrieved the large brown box that was carried out from 8348 South Drexel earlier, and discarded it in trash bins behind approximately 8309 South Cregier Avenue. Surveilling officers observed ELLIS get back into the driver's seat of Vehicle 9 and drive southbound through the alley out of view.

7.     Once Vehicle 9 was gone from the immediate area, LEOs recovered the large brown box from the trash receptacle. According to recovering officers, the large

---

[2] LEOs identified ELLIS based on comparison to his state of Illinois driver's license.

3

brown box contained one large case of empty Dormin bottles.[3] The large case of Dormin bottles contained a total of 144 individual Dormin bottles. A photo of the trash pull is below:



8.      Based on the sequence described above, the recovered contents of the discarded box, including the volume of bottles, my knowledge of the investigation, including the recovery of narcotics with Dormin's active ingredient described below, and my training and experience, I believe that Dormin was used inside of Premises 1 to prepare narcotics for resale and that ELLIS removed the empty bottles of Dormin from Premises 1 and discarded them.  Furthermore, I believe that members involved

---

[3] Based on my training and experience, I know that Dormin's active ingredient is diphenhydramine and is regularly used in the preparation of narcotics for distribution. In addition, based on the investigation to date, many of the substances that LEOs received during controlled purchases from members of the DTO have tested positive for the presence of diphenhydramine. Laboratory testing also confirmed the presence of diphenhydramine in narcotics that LEOs recovered on January 12, 2026, detailed below.

in drug trafficking commonly dispose of these materials away from the location where the activity is occurring to avoid detection by law enforcement.

*January 12, 2026, Seizure of Narcotics Distributed by ELLIS*

9.     On or about January 12, 2026, at approximately 7:06 p.m., LEOs monitoring electronic surveillance observed ELLIS exit the multi-unit building containing Premises 1 carrying a weighted red bag.[4]  A few minutes later, Vehicle 9 arrived at a gas station located at 8258 South Martin Luther King Drive, Chicago, Illinois.  LEOs observed ELLIS exit Vehicle 9 and pump gas.  A few minutes later, ELLIS departed the gas station in Vehicle 9 and drove to approximately 5530 South Wells in Chicago, Illinois.  LEOs monitoring electronic surveillance observed another individual ("Individual-1") arrive at the same parking lot in a Dodge Ram pickup truck (the "Ram Pickup") and park directly behind Vehicle 9.

10.     At approximately 9:25 p.m., surveilling officers observed Individual-1 exit the Ram Pickup and walk to the front passenger window of Vehicle 9.  Individual-1 reached inside of Vehicle 9 and retrieved a weighted black bag[5] from ELLIS, who remained seated in the driver's seat of Vehicle 9.  At this time, Individual-1 returned to the Ram Pickup with the weighted black bag.  Both Vehicle 9 and the Ram Pickup departed the area.

---

[4] LEOs identified ELLIS based on comparison to his state of Illinois driver's license.

[5] LEOs were unable to observe whether the red bag carried out earlier was placed inside of the black bag, or whether the black bag was inside the red bag, or whether the black bag was already in Subject Vehicle 9 at the time of the prior surveillance.

11.     LEOs initiated mobile surveillance on the Ram Pickup and followed Individual-1 to the area of 3644 West Polk Street, Chicago, Illinois, 60624 ("3644 West Polk").  At this time, surveilling officers observed Individual-1 park the Ram Pickup at 3644 West Polk, exit the Ram Pickup and unlock the rear gate of the multi-unit building located at 3644 West Polk.  LEOs then observed Individual-1 return to the Ram Pickup and retrieve the weighted black bag he received from ELLIS.  At this time, LEOs approached Individual-1 in the alleyway near the Ram Pickup. Individual-1 fled from law enforcement and, during his flight, tossed the weighted black bag over a fence into the vacant lot of 3642 West Polk Street (directly next to the multi-unit building that contains 3644 West Polk).  During this sequence, Individual-1 fled up to the top floor rear of the multi-unit building that contains 3644 West Polk before apprehension by law enforcement.[6]  LEOs subsequently recovered the weighted black bag and additional loose narcotics that spilled from the black bag after Individual-1 tossed it, and found it to contain approximately 1,770 grams, inclusive of packaging, of suspected narcotics packaged in purple Ziploc baggies. Furthermore, LEOs conducted a plain view search of the Ram Pickup and did not observe any other weighted black bags inside of the vehicle.  A photograph of the contents of the seizure is below:

---

[6] Individual-1 was detained by law enforcement and released without charges.

6



12.     These substances were later submitted to the United States Customs and Border Protection Laboratory for testing and analysis. The sampled substances subsequently tested positive for the presence of fentanyl and diphenhydramine.

13.     Based on the sequence described above, my knowledge of the investigation, and my training and experience, I believe that ELLIS delivered a large resupply of narcotics to Individual-1, which ELLIS initially retrieved from Premises 1.

*Search Warrant at Premises 1*

14.     On or about July 1, 2026, LEOs executed search warrant number 26 M 439, which authorized a search of Premises 1. According to a Special Agent from HSI who was present on scene:

a.     After entering Premises 1, LEOs observed ELLIS exiting a bedroom inside Premises 1, and ELLIS was the only person inside Premises 1 at the time.

b.     During the search, LEOs recovered, among other things, the following items: (1) approximately 9 kilograms[7] of suspected fentanyl; (2) multiple

---

[7] This weight is approximate and is inclusive of packaging.

firearms; (3) paraphernalia consistent with the packaging of narcotics; and (4) a quantity of U.S. currency.

15. LEOs subsequently conducted a field test of one of the kilograms, which tested positive for fentanyl.

16. Based on my training and experience, a quantity of 9 kilograms of narcotics is consistent with the sale and distribution of narcotics, not personal use.

*Conclusion*

17. Based on the foregoing facts, I respectfully submit that there is probable cause to believe that on or about January 12, 2026, ELLIS knowingly and intentionally distributed a controlled substance, namely, 400 grams or more of a mixture and substance containing a detectable amount of fentanyl, a Schedule II Controlled Substance, and that on or about July 1, 2026, ELLILS knowingly and intentionally possessed with intent to distribute 400 grams or more of a mixture and substance containing a detectable amount of fentanyl, a Schedule II Controlled Substance, all in violation of Title 21,United States Code, Section 841(a)(1).

FURTHER AFFIANT SAYETH NOT.

*Dylan Belcher*

DYLAN BELCHER
Special Agent, Homeland Security Investigations

SWORN TO AND AFFIRMED by telephone July 1, 2026.

*Laura K. McNally*

Honorable Laura K. McNally
United States Magistrate Judge

8